IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLIE JACKSON, #1127789, | ) |
| Plaintiff(s), | ) No. C 12-2516 CRB (PR) |
| v. | ) ORDER GRANTING |
| C.D.C.R., et al., | ) DEFENDANTS' MOTION FOR |
| | ) SUMMARY JUDGMENT |
| Defendant(s). | ) (Docket #145 & 168) |

I.

Plaintiff Charlie Jackson is currently incarcerated at the Northern Nevada Correctional Center in Carson City, Nevada. But on June 11, 2012, while he was incarcerated at San Quentin State Prison in San Quentin, California (SQSP), plaintiff filed a pro se prisoner complaint under 42 U.S.C. § 1983 in this court challenging various conditions of his confinement at SQSP. After several rounds of dismissals with leave to amend and amended complaints, plaintiff filed the operative Third Amended Complaint (TAC) alleging that at various times in 2010, while he was at SQSP, SQSP doctors Fong, Burton and Freiha denied him treatment for his mental illnesses (including depression and anxiety) despite his asking them for treatment.

Per order filed on January 30, 2014, the court screened the TAC under 28 U.S.C. § 1915A and found that, liberally construed, plaintiff's allegations appear to state a cognizable § 1983 claim for deliberate indifference to serious medical needs against doctors Fong, Burton and Freiha. (The court found that plaintiff also appeared to state a cognizable § 1983 claim against doctor Sprick, but Sprick later was dismissed without prejudice because he could not be located.)

Defendants Fong, Burton and Freiha now move for summary judgment under Federal Rule of Civil Procedure 56 on the ground that plaintiff failed to properly exhaust available administrative remedies before filing suit, as required by the Prison Litigation Reform Act of 1995 (PLRA). They also argue that they are entitled to qualified immunity. After being advised of what is required of him to oppose defendants' motion, plaintiff filed an opposition and defendants filed a reply.[1]

II.

Plaintiff claims defendants Fong, Burton and Freiha were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they denied him treatment for his mental illnesses.

Plaintiff specifically alleges that he met with Fong on June 15, 2010 "for the purpose of a mental health consultation," but during the consultation Fong "told the plaintiff he did not qualify for inclusion in the mental health program." TAC (dkt. #103) ¶ 6.

Plaintiff also alleges that he "was seen on June 30, 2010 by Dr. Frieha (or Freihas) [sic] in response to the C.D.C.R. form 7362 health care services request form he submitted on June 24, 2010." Id. ¶ 8. During this meeting, plaintiff "detailed his extensive history of mental illness dating back to age four," but Freiha "denied plaintiff's request informing him he does not 'dictate the program and would not be provided treatment.'" Id.

Plaintiff further alleges that on August 27, 2010, he met with Burton, who denied plaintiff's request to be "placed in ad-Seg [administrative segregation] to deal with mental health issues." Id. ¶ 13.

---

[1] Because defendants Fong and Burton moved for summary judgment before defendant Freiha, plaintiff filed two sets of opposition papers.

2

III.

"The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (citing Woodford v. Ngo, 548 U.S. 81, 85 (2006)). To the extent that the evidence in the record permits, the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA is a motion for summary judgment under Rule 56. Id. at 1168. The burden is on the defendant to prove that there was an available administrative remedy that the plaintiff failed to exhaust. Id. at 1172. If the defendant meets that burden, the burden shifts to the prisoner to present evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. Id. The ultimate burden of proof remains with the defendant, however. Id.

If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. Id. at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. Id.

IV.

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. Porter v.

Nussle, 534 U.S. 516, 524 (2002). All available remedies must now be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Similarly, exhaustion is a prerequisite to all prisoner suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." Id. at 90.

The California Department of Corrections and Rehabilitation (CDCR) provides any inmate or parolee under its jurisdiction the right to appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). To initiate an appeal, the inmate or parolee must submit a CDCR Form 602 describing the issue to be appealed to the appeals coordinator's office at the institution or parole region for receipt and processing. Id. § 3084.2(a) - (c). The appeal must name "all staff member(s) involved" and "describe their involvement in the issue." Id. § 3084.2(a)(3). CDCR's appeal process consists of three formal levels of appeals: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee. Id. §§ 3084.7, 3084.8. A prisoner exhausts the appeal process when he

completes the third level of review. Id. § 3084.1(b); Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010). A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." Cal. Code Regs. tit. 15, § 3084.1(b).

Defendants properly raise failure to exhaust in a Rule 56 motion for summary judgment and argue that plaintiff failed to properly exhaust available administrative remedies as to his deliberate indifference to serious medical needs claim against them before filing suit. Defendants specifically argue that plaintiff did not file an appeal in a manner that complied with the California Code of Regulations because he waited nearly two years to file an appeal, and the appeal consequently was cancelled as untimely. They note that the regulations require an inmate to submit an appeal within 30 days from when the incident or issue occurred. Cal. Code Regs. tit. 15, § 3084.8.

In support, defendants submit evidence showing that from 2009 to 2014, plaintiff submitted only one inmate appeal regarding inadequate mental health treatment by defendants Fong, Burton or Freiha. Almares Decl. (dkt. #171) ¶¶ 5-6; Robinson Decl. (dkt. #170) ¶¶ 7-8. In March 2012, plaintiff submitted appeal SQ-HC-12036540, complaining that the mental health department at SQSP was deliberately indifferent to his mental health needs. He specifically noted the encounters he had with Fong, Burton and Freiha in 2010, and asked that they be disciplined and fined. Almares Decl. Ex. A; Robinson Decl. ¶ 7 & Ex. B. On March 28, 2012, SQ-HC-12036540 was screened, canceled and returned to plaintiff at the first level of review because there was too large of a lapse in time between when the events in the appeal occurred and when plaintiff filed the appeal. Almares Decl. Ex. A; Robinson Decl. Ex. B. The decision explained that plaintiff failed to file an appeal within 30 days of first having knowledge of the action or decision being appealed, as required by the regulations; and that

5

plaintiff could not resubmit the cancelled appeal unless he filed a separate appeal regarding the cancellation and that separate appeal was granted. Id.

In April 2012, plaintiff filed a separate appeal challenging the cancellation decision in SQ-HC-12036540 on the ground that he was mentally and physically unable to file the appeal before March 2012. Almares Decl. ¶¶ 7-8 & Ex. B. The new appeal was assigned log number SQ-HC-12036596. Id. On April 26, 2012, SQ-HC-12036596 was denied at the first level of review on the ground that plaintiff's medical records and other information provided by the medical records department confirmed that plaintiff was mentally and physically able to file SQ-HC-12036540 within the time limit set by the regulations. Id. Ex. B. Plaintiff appealed, but the second level of review affirmed the first-level decision on May 31, 2012, and the third level of review canceled and closed the appeal on January 11, 2013 because plaintiff had been discharged from CDCR. Robinson Decl. ¶ 10 & Ex. C.

The evidence submitted by defendants meets their burden of showing that there was an available administrative remedy that plaintiff failed to properly exhaust in connection with his deliberate indifference to serious medical needs claim against defendants Fong, Burton and Freiha. See Albino, 747 F.3d at 1172. The burden now shifts to plaintiff to present evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. See id.

Under the law of the circuit, evidence of actions by prison officials preventing proper exhaustion meet plaintiff's burden of production because, if true, such actions would make administrative remedies effectively unavailable. See Williams v. Paramo, No. 13-56004, 2015 WL 74144, at *7 (9th Cir. Jan. 7, 2015). So would improper screening of a prisoner's administrative grievances.

6

See Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010). But to fall within this exception, the prisoner must show "that he attempted to exhaust his administrative remedies but was thwarted by improper screening." Id. He must show "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." Id.

### A.

Plaintiff argues that the exhaustion requirements of the PLRA do not apply to him in this case because he filed the operative TAC after he was released from SQSP (and before he was incarcerated again in Nevada). Not so.

Under the law of the circuit, "individuals who are prisoners (as defined by 42 U.S.C. § 1997e(h)) at the time they file suit must comply with the exhaustion requirements of [the PLRA]." Talamantes v. Leyva, 575 F.3d 1021, 1023-24 (9th Cir. 2009) (citations omitted). A former prisoner who files suit after he is released from prison consequently need not comply with the exhaustion requirements of the PLRA. See id. at 1024. But a prisoner who files suit before he is released from prison must comply with the exhaustion requirements of the PLRA. See Anderson v. Deleon, No. C 12-6055 SI (PR), 2014 WL 3595020, at *6 (N.D. Cal. July 21, 2014) ("Although [the plaintiff] is now out of custody, the exhaustion requirement in § 1997e(a) applies because he was a prisoner at the time he filed this action, and the statute plainly requires exhaustion by a 'prisoner.' [The plaintiff's] subsequent release from custody after he filed this action does not excuse the need to exhaust before filing this action."); accord Dixon v. Triesch, No. 1:12cv01449 LJO DLB, 2003 WL 6670436, at *3 (E.D.

Cal. Dec. 18, 2013); Smedley v. Reid, No. 08cv1602 BTM (BLM), 2010 WL 391831, at **3-4 (S.D. Cal. Jan. 27, 2010). The deciding factor is whether the individual was a prisoner at the time he filed suit, not whether he was a prisoner at the time he filed any subsequent amended pleadings. Because it is undisputed that plaintiff was a prisoner at SQSP when he filed this action in 2012, he must comply with the exhaustion requirements of the PLRA.

B.

Plaintiff argues that the exhaustion requirements of the PLRA do not apply to the operative TAC under the rationale of Rhodes v. Robinson, 621 F.3d 1002 (2010). Plaintiff's reliance on Rhodes (and its progeny) is misplaced.

In Rhodes, the Ninth Circuit addressed the holding in McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002), that exhaustion must occur prior to the filing of the original complaint. The issue was whether new claims brought in an amended complaint were barred under McKinney if plaintiff had failed to exhaust them before he filed the original complaint. The court held that the new claims, which were based on actions that took place after the original complaint was filed, were not barred under McKinney so long as plaintiff exhausted them prior to the filing of the amended complaint. 621 F.3d at 1006. And in the subsequent case of Cano v. Taylor, 739 F.3d 1214 (9th Cir. 2014), the court added that even new claims based on actions that took place before the original complaint was filed, were not barred under McKinney so long as plaintiff exhausted them prior to the filing of the amended complaint. 739 F.3d at 1220.

But the court in neither Rhodes nor Cano eliminated the well-established requirement that a plaintiff must properly exhaust by using all steps of the administrative process and complying with "deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. The plaintiffs in both Rhodes and

1    Cano properly and fully exhausted available administrative remedies as to the
2    new claims they brought in their amended complaints.  Neither Rhodes nor Cato
3    excuse as a matter of law plaintiff's failure to properly exhaust by filing a timely
4    appeal under CDCR's regulations.

C.

6         Plaintiff argues that if the exhaustion requirements of the PLRA apply to
7    him, the court should excuse his failure to file a timely appeal based on mental
8    incapacitation.  Plaintiff specifically argues that he was unable to file a timely
9    appeal in connection with his claim of deliberate indifference to serious medical
10   needs in and around 2010 because he was "mentally incapacitated" in 2010.
11   Opp'n (dkt. #164) at 15.
12        Plaintiff raised essentially the same claim to CDCR in April 2012, when
13   he sought reinstatement of his cancelled untimely appeal on the ground that he
14   was mentally and physically unable to file the appeal before March 2012.  See
15   Almares Decl. ¶¶ 7-8 & Ex. B.  The claim was rejected on the ground that
16   plaintiff's medical records and other information provided by the medical records
17   department confirmed that plaintiff was mentally and physically able to file a
18   timely appeal in 2010.  Id. Ex. B.  Here, a review of the record of health care
19   inmate appeals plaintiff filed while in the custody of CDCR also compels that his
20   incapacitation claim be rejected.  The record shows that plaintiff was able to file
21   a timely appeal of defendants' alleged deliberate indifference to his serious
22   medical needs in June and August 2010 because plaintiff filed at least three
23   health care appeals during that time – SQ HC 11017200 filed August 4, 2010; SQ
24   HC 11017279 filed August 12, 2010; and SQ HC 11017666 filed October 4,
25   2010.  See Robinson Decl. Ex. A.
26        Plaintiff has not set forth sufficient evidence to rebut defendants' showing

9

1  that plaintiff did not properly exhaust available administrative remedies in
2  connection with his deliberate indifference to serious medical needs claim against
3  them by using all steps of CDCR's administrative process and complying with its
4  "deadlines and other critical procedural rules." Woodford, 548 U.S. at 90.  The
5  court is satisfied that defendants have met their ultimate burden of proving failure
6  to properly exhaust by setting forth uncontroverted evidence that plaintiff failed
7  to follow prison deadlines and procedures when he submitted his appeal nearly
8  two years after defendants' alleged deliberate indifference.  See Williams, 2015
9  WL 74144, at *7 (noting that evidence of failure to follow prison procedures may
10 be sufficient for summary judgment for failure to properly exhaust).

## V.

For the foregoing reasons, defendants' motion for summary judgment (dkt. #145 & 168) for failure to properly exhaust under the PLRA is GRANTED.[2]

The clerk is instructed to enter judgment in accordance with this order and to close the file.

SO ORDERED.

DATED: Feb. 17, 2015

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\CR.12\Jackson, C.12-2516.msj.wpd

---

[2] The court need not decide whether defendants also are entitled to qualified immunity.

10